UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ATCHAFALAYA BASINKEEPER, INC., ET AL.　　CIVIL ACTION

VERSUS　　NO. 23-1697-BAJ-RLB

LIEUTENANT GENERAL SCOTT A.
SPELLMON, ET AL.

### ORDER

This matter is before the Court on Plaintiffs' Motion to Correct, or in the Alternative Supplement, the Administrative Record ("Motion to Correct or Supplement") (R. Doc. 21). The motion is opposed. (R. Doc. 24). Plaintiffs filed a Reply. (R. Doc. 25).

**I.　Background**

On December 28, 2023, Atchafalaya Basinkeeper, Inc. and the Louisiana Crawfish Producers Association West (collectively, "Plaintiffs") commenced this action, naming as defendants Lieutenant General Scott Spellmon and the U.S. Army Corps of Engineers (collectively, "Defendants" or the "Corps"). (R. Doc. 1, "Complaint").

In the Complaint, Plaintiffs allege that on or about August 1, 2021, Benjamin Miller ("Miller") and the Miller Hunting Club discharged approximately 130 cubic meters of fill and spoil material into Pat's Throat Bayou ("Pat's Throat"),[1] a waterway in the Atchafalaya Basin, creating a blockage (the "Structure") without first obtaining a permit. (R. Doc. 1 at 16). Plaintiffs allege that Pat's Throat is a navigable water of the United States, and that the Structure completely spans Pat's Throat, preventing navigation. (R. Doc. 1 at 14, 17). Among other things, Plaintiffs allege that the three culverts emplaced within the Structure "sit above the water level

---

[1] The Corps refers to this waterway as Pat's Throat Canal.

during most of the year" and "do not allow for the continued flow of water through the area in most conditions." (R. Doc. 1 at 19-20).

The Corps' enforcement regulations allow for the issuance of after-the-fact permits for activities conducted without prior authorization required by law. *See* 33 C.F.R. § 326.3(e). There is no dispute that on March 28, 2022, the Corps issued Miller an after-the-fact permit with respect to the Structure pursuant to Nationwide Permit 14 ("NWP 14") and statutory authority provided by Section 10 of the Rivers and Harbors Act of 1899 ("RHA"), 33 U.S.C. § 403, and Section 404 of the Clean Water Act ("CWA"), 33 U.S.C. § 1344. (*See* AR000001-08, the "Permit"). The Permit was prepared by Zachary Steinkoenig (Project Manager) and approved by John M. Herman (Chief, Central Evaluation Branch). The Permit states, in relevant part, the following:

> Direct and indirect effects caused by the . . . activity: Direct effects of the activity include the permanent placement of fill and culvert structures within canal waterbottoms thus permanently impact canal waterbottoms habitat and hydrology. The project is located is a Section 10 waterway and the permittee provided information that debris is common throughout the waterway and that the waterway is not navigable so the project will not have an effect on navigability. Indirect effects to adjacent waters and wetlands are expected to be minimal.

(AR000001). Plaintiffs allege that the Corps approved the Permit based solely on the information provided by Miller, without any independent verification by the Corps. (R. Doc. 1 at 18-19; *see* R. Doc. 21-1 at 3). The administrative record indicates that Mr. Steinkoenig obtained information regarding the Structure and the resulting effect on navigation directly from Miller. (*See* AR000050-58).

In seeking recovery pursuant to nine separate claims, Plaintiffs allege, among other things, the following: (1) the Corps' issuance of the Permit was arbitrary and capricious, and in violation of NWP General Condition 1, because the Structure has a significant impact on the

navigability of Pat's Throat; [2] (2) the Corps' after-the-fact permit regulations and NWP 14 exceed the statutory authority of Section 10 of the RHA, which requires authorization prior to construction; [3] (3) the Corps issued the Permit in violation of its authority pursuant to Section 9 of the RHA, which governs the construction of "dams" over navigable waters of the United States; [4] (4) the Corps' issuance of the Permit was arbitrary and capricious given the impact on the shellfish population and restriction of movement of aquatic species in violation of Regional Condition 7, [5] as well as other General and Regional Conditions governing the effect on waterbodies, restriction on the normal flow of water, and requiring signed certifications of completion; and (5) if the Corps' after-the-fact permit regulations are legal under the RHA, then the issuance of the Permit violated the Corps' own procedures outlined in 33 CFR parts 320 through 325. (R. Doc. 1 at 21-25).

On June 7, 2024, the Corps filed the administrative record, which is composed of three separate certified records: (1) the administrative record of the Corps for Reissuance and Modification of Nationwide Permits, 86 Fed. Reg. 2744 (Jan. 13, 2021) and 86 Fed. Reg. 73522

---

[2] *See* Issuance and Reissuance of Nationwide Permits, 86 Fed. Reg. 2744, 2867 (Jan. 13, 2021) ("No activity may cause more than a minimal adverse effect on navigation.").
[3] *See* 33 U.S.C. § 403 (The creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States is prohibited; and it shall not be lawful to build or commence the building of any wharf, pier, dolphin, boom, weir, breakwater, bulkhead, jetty, or other structures in any port, roadstead, haven, harbor, canal, navigable river, or other water of the United States, outside established harbor lines, or where no harbor lines have been established, except on plans recommended by the Chief of Engineers and authorized by the Secretary of the Army; and it shall not be lawful to excavate or fill, or in any manner to alter or modify the course, location, condition, or capacity of, any port, roadstead, haven, harbor, canal, lake, harbor of refuge, or inclosure within the limits of any breakwater, or of the channel of any navigable water of the United States, unless the work has been recommended by the Chief of Engineers and authorized by the Secretary of the Army prior to beginning the same.").
[4] *See* 33 U.S.C. § 401 (It shall not be lawful to construct or commence the construction of any bridge, causeway, dam, or dike over or in any port, roadstead, haven, harbor, canal, navigable river, or other navigable water of the United States until the consent of Congress to the building of such structures shall have been obtained and until the plans for (1) the bridge or causeway shall have been submitted to and approved by the Secretary of the department in which the Coast Guard is operating, or (2) the dam or dike shall have been submitted to and approved by the Chief of Engineers and Secretary of the Army.").
[5] *See* U.S. Army Corps of Engineers, Mississippi Valley Division, State of Louisiana 2021 Nationwide Permit (NWP) Regional Conditions, *2 ("[C]ulverts must be sufficiently sized to maintain expected high-water flows and be installed at a sufficient depth to maintain low flows to sustain the movement of aquatic species.")

(Dec. 27, 2021); (2) the administrative record of the Corps, Mississippi Valley Division for Nationwide Permit Regional Conditions in Louisiana; and (3) the administrative record of the Corps, New Orleans District, for the Permit issued to Miller pursuant to the CWAA and RHA. (*See* R. Doc. 16).

On July 31, 2024, Plaintiffs filed the instant Motion to Correct or Supplement, which seeks the inclusion of two distinct sets of emails into the administrative record. (R. Doc. 21). The first set of emails, which post-date the Corp's decision by nearly one month, are generally between Corps employees discussing the navigability and water flow at Pat's Throat. (R. Doc. 21-2, "Exhibit A"). The second set of emails document Plaintiffs' notification of the existence of the Structure to the Corps. (R. Doc. 21-3, "Exhibit B"). Plaintiffs seek to "correct" the administrative record with these emails on the basis that the emails should have been included in the administrative record by the Corps. In the alternative, Plaintiffs seek to "supplement" the administrative record on the basis that the emails "provide crucial background information on the effects on navigation and water flow of the permitted [Structure], as well as demonstrate the Corps' inadequate explanation of its decision." (R. Doc. 21 at 1-2).

## II.     Law and Analysis

### A.     Legal Standards

Under the Administrative Procedure Act ("APA"), "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. The APA requires a court reviewing an agency action to "review the whole record or those parts of it cited by a party." 5 U.S.C. § 706. "[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially by the reviewing court." *Camp v.*

*Pitts*, 411 U.S. 138, 142 (1973). Pursuant to this "record rule," "[a]gency action is to be upheld, if at all, on the basis of the record before the agency at the time it made its decision." *Indep. Turtle Farmers of La., Inc. v. United States*, 703 F. Supp. 2d 604, 610 (W.D. La. 2010) (quoting *Louisiana ex rel. Guste v. Verity*, 853 F.2d 322, 327 n.8 (5th Cir. 1988)).

Nevertheless, an agency cannot "unilaterally determine what constitutes the administrative record," and its "designation of the administrative record, like any established administrative procedure, is entitled only to a presumption of administrative regularity." *Atchafalaya Basinkeeper v. U.S. Army Corps of Engineers*, No. 18-23, 2019 WL 13159731, at *1 (M.D. La. May 14, 2019) (quoting *City of Dallas, Tex. v. Hall*, No. 07-0060, 2007 WL 3257188, at *4 (N.D. Tex. Oct. 29, 2007)).

"The Court may look outside the administrative record in narrow circumstances." *OnPath Fed. Credit Union v. United States Dep't of Treasury, Cmty. Dev. Fin. Institutions Fund*, No. 20-1367, 2021 WL 5769468, at *2 (E.D. La. Dec. 6, 2021). "Supplementation of the administrative record is not allowed unless the moving party 'demonstrates unusual circumstances justifying a departure from the general presumption that review is limited to the record compiled by the agency.'" *Medina Cnty. Env't Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 706 (5th Cir. 2010) (quoting *Am. Wildlands v. Kepmthorne*, 530 F. 3d 991, 1002 (D.C. Cir. 2008)). The Fifth Circuit specifically held that supplementation with extra-record evidence "may be permitted" in the following three situations:

> (1) the agency deliberately or negligently excluded documents that may have been adverse to its decision,
>
> (2) the district court needed to supplement the record with 'background information' in order to determine whether the agency considered all of the relevant factors, or

(3) the agency failed to explain administrative action so as to frustrate judicial review.

*Medina*, 602 F.3d 706 (cleaned up) (citations omitted).

### B.   The Nature of the Relief Sought

As an initial matter, the Court observes that Plaintiffs fail to distinguish between the primary relief sought (correction of the administrative record) and the alternative relief sought (supplementation of the administrative record). In the end, Plaintiffs simply conflate the two terms by seeking an order requiring "the Corps to correct or supplement the administrative record in this case." (*See* R. Doc. 21-1 at 10). As discussed below, the proper distinction is not between correction and supplementation; instead, the proper distinction is between supplementation and the introduction of extra-record evidence.

In general, courts have viewed "supplementation" of the administrative record to be synonymous with "correction" or "completion" of the administrative record with materials that should have been included in the administrative record, as opposed to the introduction of "extra-record evidence" (that was properly excluded by the agency) into the administrative record. "The distinction between 'supplementation' and 'extra-record evidence' is a significant one that is sometimes overlooked in the case law." *See Gulf Coast Rod Reel & Gun Club, Inc. v. U.S. Army Corps of Engineers*, No. 13-126, 2015 WL 1883522, at *1 (S.D. Tex. Apr. 20, 2015)). The "supplementation" of the administrative record typically refers to "complet[ion of] the record by adding something that 'should have properly been included in the administrative record [but] was not . . . [due to] a clerical error' or for any other reason." *Id*. at *1 & n.1 (quoting in part *Cape Hatteras Access Prs. All. V. U.S. Dep't of Interior*, 667 F. Supp. 2d 111, 113-14 (D.D.C. 2009)). In contrast, the introduction of "extra-record evidence" into the administrative record indicates the inclusion of "additional evidence 'outside of or in addition to the administrative

6

record that was not necessarily considered before the agency." *Gulf Coast Rod Reel*, 2015 WL 1883522, at *1 (citing *Cape Hatteras Access*, 667 F. Supp. 2d 111, 113).

The Court will use the term "supplementation" in its proper sense – the correction of the administrative record with documents that should have been included by the agency. Strictly speaking, such "supplementation" is not an exception to the record rule because the documents are properly part of the administrative record. *Gulf Coast Rod Reel & Gun Club*, 2015 WL 1883522, at *1 ("Supplementation does not pose a difficult legal issue. It is consistent with the 'record rule' to remedy an inadvertent failure to include part of the agency record in the record submitted with the reviewing court.").

That said, the *Medina* decision used the term "supplementation" to refer, at least in part, to the introduction of "extra-record evidence" into the administrative record. Despite the use of the term supplementation, "at least the second and third exceptions to the record rule that *Medina* announced cover extra-record material, not intentionally or negligently omitted materials" that would typically be sought to be included in the administrative record through a motion to supplement. *See Gulf Coast Rod Reel*, 2015 WL 1883522, at *3. To be clear, Plaintiffs only ask the Court to consider these two exceptions with respect to the instant motion.[6]  The Court will only apply the second and third *Medina* exceptions to proposed extra-record evidence.

---

[6] Plaintiffs do not raise any arguments in support of a finding that the first *Medina* exception to the record rule is satisfied, *i.e.*, that the Corps "deliberately or negligently excluded documents that may have been adverse to its decision." *See Medina*, 602 F.3d 706. In reply, Plaintiffs specifically acknowledge that they "did not argue" this first exception applies. (R. Doc. 25 at 4). Accordingly, the Court will turn directly to the second and third *Medina* exceptions.

### C.    Exhibit B: Supplementation of the Administrative Record

As discussed above, the Court will first consider whether to supplement the administrative record with any documents that should have been included in the administrative record by the Corps absent some clerical error or for some other reason.

Exhibit B consists primarily of pre-decisional emails between Atchafalaya Basinkeeper and the Corps regarding the legality of the Structure. There is no dispute that these emails should be included in the administrative record. (*See* R. Doc. 21-1 at 2 n.1; R. Doc. 24 at 3 n.1). The Corps notes, however, that Plaintiffs did not request the inclusion of these documents in the administrative record until after the expiration of the deadline to confer about the completeness of the record, at which time it was too late for the Corps to respond prior to the filing of the instant Motion. The Corps has further represented that it "will produce a corrected record that includes this document, along with other documents it has identified as inadvertently excluded from the record, within thirty days of the Court's disposition of this motion." (R. Doc. 24 at 3 n.1).

Based on the foregoing, any dispute regarding whether the administrative record should be supplemented with the pre-decisional emails contained within Exhibit B is moot.[7] The Court grants Plaintiffs' motion to the extent it seeks to supplement the administrative record with the foregoing pre-decisional emails.

### D.    Exhibit A: Introduction of Extra-Record Evidence

The emails contained in Exhibit A post-date the agency decision and, therefore, constitute extra-record evidence that could not have been considered at the time the Corps issued the Permit.

---

[7] The Court agrees with the Corps that the single post-decisional email dated July 31, 2024, which simply forwards the underlying email thread, should not be made part of the administrative record.

8

Exhibit A consists of a 12-page email thread, beginning with an email on April 13, 2022, from a Corps employee to a United States Geological Survey ("USGS") employee concerning whether a water control structure, permitted in 1987, was ever erected to connect Pat's Throat to the Atchafalaya River. (R. Doc. 21-2 at 11-12). In response, the USGS employee attaches certain aerial satellite images, including a 2012 Lidar image, and discusses the water flow of Pat's Throat. (R. Doc. 21-2 at 11-12). This response is forwarded to Mr. Steinkoenig, the Corps employee who prepared the Permit. (R. Doc. 21-2 at 10). Mr. Steinkoenig then reaches out to Mr. Herman, the Corps employee who approved the permit, with respect to whether to schedule a site visit or alternatively contact the Miller Hunting Club, noting that the "issue is that the canal rarely holds water and has debris and it is very possible that the canal is impassible." (R. Doc. 21-2 at 10). Mr. Herman suggests contacting the Miller Hunting Club for photographic evidence. (R. Doc. 21-2 at 10). Mr. Steinkoenig then reaches out to Miller seeking more information regarding whether the water control structure was ever constructed. (R. Doc. 21-2 at 8-9).

On April 27, 2022, Mr. Herman (the permit approver) reaches out to Mr. Steinkoenig (the permit preparer) with various questions about the navigability and water flow at Pat's Throat:

> During low-water, how deep is the water in Pat's Throat at the culverts? And, do we know what the bottom elevation (NGVD) is at the culvert location? I'm curious to know at what gauge elevation does the water begin to backflow from Whiskey Pilot Channel into Pat's Throat and compare the elevations. This should shed some light on navigability, if Pat's Throat is not littered with obstructions (i.e., falling trees, logs, etc.). Also, go ahead and schedule a site visit soon so we can confirm the presence of the water control structure (WCS) and photographically document the navigability of Pat's Throat from the WCS to the culverts, basically is it passable by boat.

(R. Doc. 21-2 at 7). In response, Mr. Steinkoenig states the following:

> When its low I think the water is a foot or two feet max based on the ATF drawings. Attached is a photo the Hunting Club provided me showing that debris is in the canal. The photo was provided when the Atchafalaya River was moving towards flood stage so it doesn't quite represent the lowest water level. The

9

> Hunting Club said that this debris is minor compared to larger debris areas in the canal so currently I believe that the waterway is currently impassable unless all of the debris would be removed. If all the debris would be removed then it MAYBE would be navigable during high waters for a few months a year. We don't know the bottom elevation (NGVD) at the culvert location. I'll call the hunting club today to schedule a site visit.

(R.. Doc. 21-2 at 5). The remainder of the e-mail chain concerns logistics regarding the site visit. (R. Doc. 21-2 at 1-5).

These emails (as opposed to the pre-decisional emails in Exhibit B) were properly excluded by the Corps from the administrative record. The question is whether the Court should now consider these post-decisional emails as extra-record evidence pursuant to the second or third *Medina* exceptions to the record rule. That question is addressed below. To the extent Plaintiffs are seeking a finding that the emails in Exhibit A should have been included in the administrative record by the Corps, however, such relief is denied given that the documents emails constitute extra-record evidence.[8]

Plaintiffs argue that the emails in Exhibit A constitute necessary "background information in order to determine whether the agency considered all of the relevant factors." (R. Doc. 21-1 at 6-9). Plaintiffs suggest these emails demonstrate that the Corps could not have considered all relevant factors, such as water flow and navigability, at the time the Permit was issued. (R. Doc. 21-1 at 3-4, 8-10; *see* R. Doc. 25 at 2). In opposition, the Corps argues that Plaintiffs overstate the importance of the email discussions, speculate regarding what information was known to the Corp at the time of its decision, and otherwise do not identify the

---

[8] In their reply memorandum, Plaintiffs argue that these post-decisional emails are not "true extra-record evidence" because they are internal Corps emails. (R. Doc. 25 at 2 n.1). The Court rejects this argument because the emails post-date the agency's decision and, therefore, could not have been considered by the Corps and included in the administrative record. Plaintiffs further state that they will "likely seek to introduce extra-record evidence regarding the conditions in Pat's Throat Bayou, including testimony of Plaintiffs' members injured by the Corps' actions, at the summary judgment stage." (R. Doc. 25 at 2 n.1).

10

factors the Corps failed to consider in rendering its decision. (R. Doc. 24 at 8-9). In reply, Plaintiffs argue that the emails separately provide background information "that informs whether the Corps considered the mandatory factors [of NWP 14's General Condition 1 on navigation and Regional Condition 7 on water flow] <u>before</u> it issued the permit." (R. Doc. 25 at 2).

While the emails in Exhibit A are post-decisional documents, they contain information regarding the navigability and water levels of Pat's Throat, as well as shed light upon whether and to what extent the Corps had obtained knowledge regarding the navigability of Pat's Throat and its water levels at the time the Permit was issued. *See All. for the Wild Rockies v. Marten*, 585 F. Supp. 3d 1252, 1261 (D. Mont. 2021) (noting the distinction between pre-decisional documents and pre-decisional information is based on "whether the *data* pre-dates or post-dates the Agency decision.") (quoting *Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. Zinke*, 889 F.3d 584 (9th Cir. 2018)). Such pre-decisional information may be considered as extra-record evidence. *See Louisiana Crawfish Producers Ass'n W. v. Mallard Basin, Inc.*, No. 10-1085, 2019 WL 171693, at *5 (W.D. La. Jan. 10, 2019) ("[E]xceptions to the normal rule regarding consideration of extra-record materials only apply to information available at the time [of the agency decision], not post-decisional information.") (quoting *Tri-Valley CAREs v. U.S. Dep't of Energy*, 671 F.3d 1113, 1130-31 (9th Cir. 2012) (cleaned up)).

Having considered the arguments of the parties, and the record as a whole, the Court concludes that it is appropriate to consider emails contained in Exhibit A in the record as "background information" for the purposes of the second *Medina* exception. "The purpose of the second *Medina* exception is to enlighten and assist the Court, not to simply add whatever may possibly be relevant to the record. To that end, a meritorious motion might [point] out why items in the administrative record are obtuse or require significant technical expertise to understand

11

them." *Indigenous Peoples of Coastal Bend v. United States Army Corps of Engineers*, No. 21-00161, 2023 WL 6226387, at *15 (S.D. Tex. July 27, 2023). "To satisfy this exception, 'the documents in question must do more than raise nuanced points about a particular issue; [the documents] must point out an entirely new general subject matter that the agency failed to consider.'" *Texas Bankers Ass'n v. Consumer Fin. Prot. Bureau*, No. 23-144, 2024 WL 3939598, at *4 (S.D. Tex. Aug. 26, 2024) (*Oceana, Inc. v. Ross*, 454 F. Supp. 3d 62, 70 (D.D.C. 2020)). Where the plaintiffs demonstrate "the merits of this case will involve scientific and technical determinations necessitating the admission of expert testimony," such extra-record evidence may be allowed as "background information . . . necessary to determine whether the Corps considered all relevant factors" in making its decision. *See Harrison Cnty., Mississippi v. U.S. Army Corps of Engineers*, No. 19-986, 2022 WL 2443446, at *4 (S.D. Miss. July 5, 2022).

In support of their position that these emails constitute "background information," Plaintiffs rely primarily on *Mobile Baykeeper, Inc. v. U.S. Army Corps of Engineers*, No. 14-0032, 2014 WL 2569124 (S.D. Ala. June 9, 2014). In *Mobile Baykeeper*, the plaintiff challenged the Corps' decision that NWP 12 applied to discharges of dredged and fill material in connection with the construction of a 41-mile oil pipeline, notwithstanding General Condition 7's limitation of the scope of NWP 12 verifications where the activity occurs in the proximity of a public water supply intake. The court allowed supplementation of the administrative record to include a map showing, among other things, the relative locations of the pipeline route and a public water intake, where no such map was already contained in the administrative record. In reaching this conclusion, the court observed that it could not "meaningfully ascertain whether the Corps properly weighed the 'proximity' limitation of General Condition 7 in issuing the NWP 12

12

verifications unless the Court is furnished specific information depicting the spatial orientation of the Pipeline, the 'activity,' and the public water supply intake." *Id.* at *3.

The Court similarly finds that the post-decisional emails (which contain pre-decisional information regarding the navigability and water levels of Pat's Throat through satellite imagery), provide important "background" information regarding the Corps' decision, including whether the decision was arbitrary and capricious. Plaintiffs are correct that the "the proffered emails reflect that the Corps deemed it important to visit the site to answer unresolved questions about the placement of the culverts and navigability, but did not in fact go out to the site before issuing the [Permit]." (R. Doc. 21-1 at 9). In addition, Plaintiffs are correct that the emails reflect, at the time the permit was issued and shortly thereafter, (1) what the Corps knew about "the bottom elevation at the culverts," (2) the necessity and "importance of the Corps photographically documenting the bayou," and (3) could reflect "the arbitrariness of the Corps' extensive and elusive reliance on self-serving information provided by the permit applicant on critical factual issues." (R. Doc. 22-1 at 9-10).

The Court concludes that the emails are relevant to determining whether the Corps, at the time the permit was issued, considered and satisfied NWP 14's General Condition 1 (requiring no more than a minimal adverse effect on navigation) and Regional Condition 7 (requiring the sizing of culverts to maintain expected high-water flows and to maintain low flows to sustain the movement of aquatic species) in deciding to issue the after-the-fact Permit. (R. Doc. 21-1 at 3-4, 9-10). In short, the emails provide background information regarding the whether the specific Corps employees involved in the issuance of the Permit where, in fact, aware of the effect of the Structure on the navigability and water flows of Pat's Throat at the time the Permit was issued. (R. Doc. 25 at 2).

In opposing this relief, the Corps notes that the emails question whether Pat's Throat is even navigable in the first place. The Corps argues that if Pat's Throat is not, in fact, navigable, then the RHA would not apply at all. (R. Doc. 24 at 8). To be clear, the Corps issued the Permit pursuant to its authority under the RHA and CWA. The Corps has also admitted that Pat's Throat is a navigable water of the United States. (R. Doc. 10 at 10). To the extent the emails support a finding that Pat's Throat is not, in fact, navigable, then they would also support a finding that the Corps acted outside of its statutory authority in issuing the Permit. These issues are properly addressed at the summary judgment stage of this action.

The Corps also argues that Plaintiffs speculate that the emails have any bearing on the Corps' knowledge of the navigability and water flow at Pat's Throat. (R. Doc. 24 at 8). The Court disagrees, given that the emails show the extent to which the two Corps employees involved in the issuance of the Permit understood the high and low water flows of Pat's Throat, and the navigability of Pat's Throat, at the time the Permit was issued. The Court is aware that the emails ultimately concern another location on Pat's Throat. The emails nevertheless provide important background information relevant to determining whether the agency's actions were arbitrary and capricious.

Having concluded that Plaintiffs have met their burden of demonstrating that the post-decisional email correspondence is "background" information within the meaning of the second *Medina* exception, the Court need not consider whether the extra-record evidence should be considered pursuant to the third *Medina* exception.

Nevertheless, the Court observes that the third *Medina* exception to the record rule – which considers whether the agency failed to explain administrative action so as to frustrate judicial review – would not allow the inclusion of this particular extra-record evidence into the

14

administrative record. That exception is ultimately derived from the U.S. Supreme Court decision *Camp v. Pitts*, 411 U.S. 138, 142-43 (1973).[9] The *Camp* decision provides that when the administrative record is inadequate with respect to informal agency action made without any explanation, thus frustrating effective judicial review, a court may "obtain from the agency, **either through affidavits or testimony**, such additional explanations of the reasons for the agency decision as may prove necessary." *Id.* (emphasis added). Such affidavits or testimony may be obtained through limited discovery. *See McWaters v. Fed. Emergency Mgmt. Agency*, No. 05-5488, 2006 WL 8430802, at *3 (E.D. La. Jan. 11, 2006) ("Discovery consisting of affidavits and testimony may be permitted, but only when an agency has provided no explanation for its decision or delay.") (citing *Camp*, 411 U.S. at 142-43); *Belgard, Jimmie Belgard v. U.S. Dep't of Agr.*, 185 F. Supp. 2d 647, 653 (W.D. La. 2001) ("While the focal point of review is the administrative record, however, the court may rely upon the additional explanations of agency decision-makers obtained through affidavits, where the agency's rationale cannot be fully discerned for effective judicial review.").

    The emails in Exhibit A do not constitute affidavits or testimony obtained from the Corps through discovery, and the Court has not otherwise deemed it necessary to obtain such additional explanations of the reasons for the agency decision. Accordingly, they do not qualify for inclusion in the administrative record pursuant to the third *Medina* exception to the record rule.

---

[9] *See Medina*, 602 F.3d 706 (citing *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008) (citing *James Madison Ltd. by Hecht v. Ludwig,* 82 F.3d 1085, 1095 (D.C. Cir. 1996) (citing *Env't Def. Fund, Inc. v. Costle*, 657 F.2d 275, 285 (D.C. Cir. 1981) ("The most noted exception to the general [record] rule occurs where 'there was such a failure to explain administrative action as to frustrate effective judicial review.'") (quoting *Camp v. Pitts*, 411 U.S. 138, 142-43 (1973)).

**III.     Conclusion**

For the foregoing reasons,

**IT IS ORDERED** that Plaintiffs' Motion to Correct, or in the Alternative Supplement, the Administrative Record (R. Doc. 21) is **GRANTED IN PART and DENIED IN PART.**

**IT IS FURTHER ORDERED** that the Corps shall supplement the Administrative Record with the contents of Exhibit B (R. Doc. 21-3), with the exception of the post-decisional cover email dated July 31, 2024.

**IT IS FURTHER ORDERED** that the Court will consider the context of Exhibit A (R. Doc. 21-2) as extra-record evidence with respect to resolution of this action on the merits.

Signed in Baton Rouge, Louisiana, on December 29, 2024.

                                              **RICHARD L. BOURGEOIS, JR.**
                                              **UNITED STATES MAGISTRATE JUDGE**